Filed 1/20/15  Barton v. RPost International CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KENNETH BARTON, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> RPOST INTERNATIONAL LIMITED et al., <br><br>     Defendants and Respondents. | B255535 <br><br> (Los Angeles County Super. Ct. <br> No. YC061581) |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed.

McGarrigle, Kenney & Zampiello, Patrick C. McGarrigle, Michael J. Kenney, for Plaintiff and Appellant.

Ben-Zvi & Associates and Henry Ben-Zvi for Defendants and Respondents.

_____

Plaintiff and appellant Kenneth Barton appeals from a postjudgment order in favor of defendants and respondents RPost International Limited (RIL), Zafar Khan and Terrance Tomkow denying a motion for attorney fees. On appeal, Barton contends (1) he was a party to an agreement with the defendants which contained an attorney fees provision, and (2) his tort claims constituted an action to enforce or interpret the agreement. We agree with the trial court that Barton's action for conversion, fraud, breach of fiduciary duty and unfair competition was not an action to enforce or interpret the agreement. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1999, Tomkow, Barton and Khan founded the Nevada corporation RPost, Inc. In September 2000, the founders converted their loans to RPost into equity in the company. Barton was issued shares of RPost stock in exchange for forgiveness of loans he had made to the company. RPost was reorganized as a Bermuda corporation RPost International Limited (RIL). RIL's directors adopted written resolutions allocating shares in the new corporation. The founders exchanged their common shares of RPost for common shares of RIL.

By way of resolution on January 2, 2001, RIL's directors cancelled the allotment of shares made in September 2000. The directors clarified the allotment of RIL shares to the founders in exchange for RPost share was as follows: 4,822,000 to Tomkow, 3,616,500 to Khan, and 3,616,500 to Barton. On May 30, 2001, and August 21, 2001, RIL's directors adopted resolutions issuing additional shares of common stock to each of the founders in exchange for services rendered and cancellation of loans to the company. The cost of Barton's shares was charged against Barton's accrued salary and unpaid expenses. Barton suffered a stroke in September 2003.

In May 2004, Symantec Corporation agreed to invest $1,100,000 for preferred shares of RIL. Symantec and RIL executed the "Series E Preferred Stock Purchase Agreement." The "transaction agreements" were expressly defined to be the Series E

2

agreement, an Investors' Rights Agreement, a Right of First Refusal and Co-Sale Agreement, and a Voting Agreement. The Series E agreement was executed by Khan on behalf of the company RIL and by John Thompson on behalf of the purchaser Symantec.

Paragraph 6.8 of the Series E agreement contained the following attorney fees provision: "If any action at law or in equity (including arbitration) is necessary to enforce or interpret the terms of any of the Transaction Agreements, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled."

Attached to the agreement was an amended Investors' Rights Agreement made among RIL, the investors holding various stock series, and Barton, Khan and Tomkow as founders. This document was signed by Khan on behalf of RIL, Thompson on behalf of the investor Symantec, and Khan, Barton and Tomkow as founders and common stock holders.

A Right of First Refusal and Co-Sale Agreement was also attached, entered into by Barton, Khan, and Tomkow as the founders, RIL as the company, and the investors holding preferred stock, including Series E investor Symantec. The agreement required the founders to notify the company and each investor if they proposed to accept a bona fide offer to sell their stock. This document was executed by the same parties as the Investors' Rights Agreement.

The Voting Agreement attached to the Series E Agreement was made by RIL as the company, Barton, Khan and Tomkow as the founders, and holders of common and preferred stock, including Symantec. The agreement concerned Symantec's representation on RIL's Board of Directors. This agreement was executed by the same parties as the previous two documents.

On September 20, 2004, Barton's attorney wrote Khan and Tomkow to confirm Barton's immediate resignation from the RIL entities. He requested the delivery of share certificates and equity documentation within three days. He made similar demands in subsequent letters. In June 2005, Khan, Tomkow and RIL responded that RIL was not required to deliver share certificates to founders.

3

On July 7, 2005, Barton filed an action against RIL, Kahn, Tomkow, and another individual, for breach of fiduciary duty and violation of the Labor Code. (*Barton v. RPost International Limited et al.* (Super. Ct. L.A., 2005, No. YC051312).) Barton alleged, among other things, the defendants refused to deliver his stock certificates. RPost and RIL filed an action against Barton for breach of contract, among other causes of action, but later dismissed the complaint without prejudice. On April 24, 2006, RIL directors attempted to delete the allocation of shares to Barton from the prior resolutions.

On June 8, 2006, Barton filed a second complaint against RIL for specific performance and damages for failing to issue his stock certificates. Barton's actions were consolidated. In October 2006, RIL obtained a legal opinion that Barton had no title to shares and began to assert Barton was not a shareholder. On July 7, 2009, Khan stated in deposition that RIL cancelled Barton's shares and returned them to RIL's treasury. RIL's shareholder registries were not produced, but RIL's documents showed the shares were forfeited after June 30, 2008, and before June 30, 2009.

Trial began. The trial court granted a motion for directed verdict under Code of Civil Procedure section 631.8 on the cause of action for delivery of stock certificates, finding contingent events had not occurred which would require RIL to deliver stock certificate to the founders. The parties settled the remaining causes of action.

Barton filed the complaint in the instant case on January 29, 2010, prior to trial in the earlier lawsuits. The operative third amended complaint against RIL, Khan and Tomkow and other defendants alleged causes of action for conversion of stock, breach of fiduciary duty, declaratory relief, fraud and violation of Business and Professions Code section 17200. A bench trial was held. The trial court found Barton paid for his shares through deferred compensation and unpaid expenses. Barton's stock was converted on June 30, 2009, or July 7, 2009, when the shares were transferred back to the RIL treasury. The court found Barton met his burden of proof on the causes of action for fraud, breach of fiduciary duty and violation of Business and Professions Code section 17200, based on the retroactive modification of resolutions issuing shares to Barton. The court issued a declaration that Barton was the owner of 6,016,500 common shares of RIL at all relevant

4

times and had provided appropriate consideration for the shares. The court initially ordered the defendants to return the converted shares, but ultimately awarded Barton the value of the shares.

The trial court entered judgment in favor of Barton on August 30, 2013, as against RIL, Khan and Tomkow. The judgment awarded Barton the net sum of $2,840,060 in compensatory damages, $100,000 in emotional distress damages, and $880,021 in prejudgment interest, for a total of $3,820,081.91. In addition, Barton was awarded $250,000 in punitive damages against Khan and $150,000 against Tomkow. RIL, Khan and Tomkow filed a timely notice of appeal. Barton also appealed. This appellate court modified the amount of the award, and as modified, affirmed the judgment.

Barton filed a motion seeking attorney fees of $2,100,000 on October 30, 2013, based on the attorney fees clause in the Series E Agreement or statutory fees provisions. RIL, Khan and Tomkow opposed the motion for attorney fees on the grounds that Barton was not a party or third party beneficiary of the Series E agreement, and even if he were a party, his lawsuit had sounded in tort and not breach of contract. He did not bring an action to enforce or interpret the Series E agreement or the transaction agreements. They argued the statutory fee provisions did not apply and the amount requested was excessive. Barton filed a reply.

On appeal, Barton represents that a hearing was held on other matters on January 6, 2014, which was not reported. The trial court promised to advise counsel if oral argument was necessary on the attorney fees motion, but otherwise, the court would issue a minute order. The court issued a minute order on February 25, 2014, stating the motion for attorney fees was previously argued on January 6, 2014, and taken under submission. The court denied the motion for attorney fees, finding no contract between the parties provided for attorney fees. Barton was not a party or third party beneficiary of the Series E agreement. The other agreements in the transaction do not contain an attorney fees provision and do not incorporate the Series E attorney fees provision. In addition, the instant action does not involve litigation about the interpretation or enforcement of the Series E agreement or any of the transaction agreements. Last, the causes of action were

5

based in tort. The theories and evidence produced at trial, which were primarily conversion and fraud, were based in tort, leading to the court's conclusion that the gravamen of the action was in tort. Barton failed to show the action was based on a contract and the court did not interpret or enforce the terms of the Series E agreement in its ruling. The court denied the request for an award of statutory fees as well. Barton filed a timely notice of appeal.

## DISCUSSION

Barton contends that because he was required to prove he was a shareholder and he relied on the Series E Agreement as evidence of his shareholder status, his action required the court to enforce and interpret the Series E agreement.

"'[T]o determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the lease, and the facts are not in dispute, such review is conducted *de novo*. [Citation.]' [Citation.] 'As the case law makes clear, the test is not whether the cause of action sounds in tort or contract. Instead, the sole question is the intent of the parties: did they intend to authorize the prevailing party to recover its attorney fees for a tort cause of action. [Citations.]' [Citation.]" (*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 182-183.)

The attorney fees provision at issue in this case provides for an award of attorney fees to the prevailing party in an action to enforce or interpret the terms of any of the transaction agreements. Barton's action did not require the trial court to interpret or enforce any terms of the transaction agreements. Barton was required to prove that he was issued shares, for which he had paid in full, and the defendants converted his shares by transferring them back to RIL's treasury, breached their fiduciary duty by forging resolutions to deny his ownership rights, and committed fraud by their actions. Barton's action relied on corporate resolutions issuing shares to him, resolutions attempting to

6

revoke his ownership, and evidence that his shares were transferred. The Series E Agreement did not issue shares to Barton or interfere with his ownership rights in any way. The Series E Agreement was so inconsequential to the resolution of the issues that all reference to the agreement could have been omitted without any impact on the judgment. Barton has not identified any term of the transaction agreements that the trial court interpreted or enforced in the judgment. The trial court properly denied the motion for attorney fees based on the attorney fee provision of the Series E Agreement.

## DISPOSITION

The postjudgment order denying Barton's motion for attorney fees is affirmed. Respondents RIL, Khan and Tomkow are awarded their costs on appeal.


KRIEGLER, J.


We concur:



TURNER, P. J.



MOSK, J.